```
 1                   UNITED STATES DISTRICT COURT
                     EASTERN DISTRICT OF MICHIGAN
 2                        SOUTHERN DIVISION

 3                         —   —   —

     EDWARD J. HOLLAND, JR.,
 4
                Plaintiff,
 5
         vs.                            Case No. 17-13926
 6
     UNITED STATES,                     Hon. Marianne O. Battani
 7
                Defendant.
 8   _____/

 9                        MOTION TO DISMISS

10           BEFORE THE HONORABLE MARIANNE O. BATTANI
                   United States District Judge
11           Theodore Levin United States Courthouse
                   231 West Lafayette Boulevard
12                       Detroit, Michigan
                   Thursday, April 12, 2018
13

14   APPEARANCES:

15   For the Plaintiff:    EDWARD J. MURPHY

16

17

18
     For the Defendant:    NEAL NUSHOLTZ
19

20

21

22

23

24       To obtain a copy of this official transcript, contact:
                Robert L. Smith, Official Court Reporter
25             (313) 234-2612 • rob_smith@mied.uscourts.gov
```

1                          TABLE OF CONTENTS

2
                                                        Page
3

4    Motion by Mr. Murphy............................... 4

5    Response by Mr. Nusholtz...........................12

6    Under advisement by the Court......................23

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

*Motion to Dismiss - April 12, 2018*

```
 1 │ Detroit, Michigan
 2 │ Thursday, April 12, 2018
 3 │ at about 12:59 p.m.
 4 │                           —   —   —
 5 │            (Court and Counsel present.)
 6 │            THE LAW CLERK:  Please rise.
 7 │            The United States District Court for the Eastern
 8 │ District of Michigan is now in session, the Honorable
 9 │ Marianne O. Battani presiding.
10 │            You may be seated.
11 │            Calling Case No. 17-13926, Holland vs. United
12 │ States of America.
13 │            THE COURT:  Good afternoon.
14 │            MR. NUSHOLTZ:  Good afternoon.
15 │            MR. MURPHY:  Good afternoon, Your Honor.
16 │            THE COURT:  May I have your appearances, please.
17 │            MR. NUSHOLTZ:  Neal Nusholtz on behalf of
18 │ Edward Holland, Jr.
19 │            MR. MURPHY:  Edward Murphy for the defendant,
20 │ United States.
21 │            THE COURT:  All right.  This is your motion to
22 │ proceed -- your motion, excuse me, defendant's.
23 │            MR. MURPHY:  Good afternoon.
24 │            THE COURT:  Mr. Murphy, you may continue.  Thank
25 │ you.
```

*Motion to Dismiss - April 12, 2018*

**4**

1    MR. MURPHY:  We are here on the government's motion

2    to dismiss.  This is an action brought by Mr. Holland seeking

3    a writ of mandamus.  The relief that Mr. Holland seeks is to

4    have an IRS levy against his social security benefits limited

5    to taking only 15 percent of those benefits going forward.

6    THE COURT:  Now that's been going on for some time,

7    this full taking; is that not correct?

8    MR. MURPHY:  Correct.  Back in 2012 is when the

9    levy occurred, and at that time the levy attached to

10   Mr. Holland's entire right to collect social security

11   benefits, and that entire right would include the monthly

12   benefits from that point forward, and for that reason the

13   Social Security Administration has been paying the full

14   amount of those benefits on a monthly basis to the

15   United States.  I say they pay it monthly, but I believe it's

16   actually just an electronic transfer of funds.  There's no,

17   you know, check being sent through the mail or anything of

18   that nature.

19   And that's a key distinction that I want to bring

20   out.  It was the seizure by levy in 2012 of the entire right

21   to social security benefits, and it's established in the law

22   that that is permissible, contrary to the plaintiff's

23   position here.

24   The plaintiff's view is that if you issue a levy in

25   2012, you've got two options; either you are constrained to

```
 1   that 15 percent on a month-to-month basis, or you can get the

 2   entire amount of only one month's social security payment.

 3   That's just incorrect.

 4        It is established in the law, and it's the

 5   government's view, that you can seize that right to property,

 6   that right to property being the right to receive the future

 7   stream of social security benefits from that time until the

 8   benefit recipient passes away.

 9        THE COURT:  But under the anti -- what is that --

10   the Anti-Injunction Act --

11        MR. MURPHY:  Yes.

12        THE COURT:  -- I believe that plaintiff is claiming

13   a judicial exception to the act.

14        MR. MURPHY:  Right.

15        THE COURT:  How do you address that if there is

16   this dispute?

17        MR. MURPHY:  Well, there is a substantive dispute

18   on the law, and the two exceptions to the Anti-Injunction Act

19   are what we need to address on the motion.  Ordinarily a suit

20   to enjoin federal tax collection, which is what this is,

21   can't be done unless either you fit within a statutory

22   exception, and the plaintiff doesn't claim that any of the

23   statutes apply, or two judicial exceptions.  And you are

24   referring to Enochs vs. Williams Packing from the 1960s out

25   of the Supreme Court, and then later South Carolina vs. Regan
```

1   from 1984, I believe.  So there are two Supreme Court

2   decisions establishing exceptions to the Anti-Injunction Act.

3         We will deal with Enochs first.  Enochs vs.

4   Williams Packing says that the Anti-Injunction Act does not

5   act as a complete bar to a suit for injunctive relief against

6   tax collection when, number one, the plaintiff is certain to

7   prevail on the merits of case, and, number two, the plaintiff

8   would suffer irreparable harm if the conduct that is sought

9   to be enjoined is allowed to continue.  Mr. Holland can't

10  meet either of these two criteria to fit within the Enochs

11  vs. Williams Packing to the Anti-Injunction Act.

12        Certainty of success on the merits is very

13  difficult for a plaintiff to prove.  We have a contested

14  legal issue here, and I don't think it's really necessary for

15  the Court on a motion to dismiss to decide who is correct as

16  a matter of the substantive merits.  All the --

17        THE COURT:  The issue is whether or not there is --

18        MR. MURPHY:  A certainty of success for the

19  plaintiff.  That's a very high bar for them to clear.

20        Usually in a case like this, the plaintiff is

21  saying I don't owe the taxes at all.  This is an unusual case

22  where the plaintiff admits that he owes the tax, and all that

23  is contested is the method of collecting the tax.  And there

24  are court decisions where this issue of whether there is a

25  15-percent limitation on social security levies, and all of

 1    those cases that have been decided have been in the

 2    government's favor, as the plaintiff acknowledges.  That fact

 3    alone should be sufficient to demonstrate that there isn't a

 4    certainty of success on the merits for the plaintiff.

 5          If you look at the plain text of the statute at

 6    issue, which is Section 6331(h) of the Internal Revenue Code,

 7    you can see that the 15-percent limitation on so-called

 8    specified payments, which includes federal payments, among

 9    other types of payments, and federal payments include

10    social security benefits.  That text of 6331(h) only says

11    that the 15-percent limitation applies to levies issued by

12    the IRS under that subsection.

13          Now there are other kinds of levies under

14    Section 6331(a) of the Internal Revenue Code which are not

15    subject to that 15-percent limitation.  And the levy at issue

16    in this case that the IRS issued against Mr. Holland's

17    social security was a levy issued under section 6331(a).

18          Section 6331(a) says that an IRS levy can attach

19    all of the taxpayer's property and rights to property.  And,

20    again, it is established in the law that the phrase "rights

21    to property" within Section 6331(a) includes the entire right

22    to receive a future stream of social security benefits.

23          The IRS has within its discretion, if they so

24    choose, to instead of proceeding under 6331(a), they can

25    issue a continuous levy.  A continuous levy is a type of levy

1    that attaches not only to property that exists on the date

2    that the levy is served but would actually attach to property

3    that the taxpayer acquires into the future.

4         Continuous levies you most commonly see with wages

5    because people haven't earned their next paycheck because

6    they haven't worked the hours.  It would be cumbersome for

7    the government to have to issue a levy every week or two

8    weeks or whenever somebody is paid, so instead the law

9    permits the government to choose to do a continuous levy on

10   paychecks.  It is relatively less common for a continuous

11   levy to be done on something like social security, but it can

12   be done.  The law permits it.

13        It's the plaintiff's view, however, that if the IRS

14   wants to levy against someone's social security, their only

15   option is to go under 6331(h).  I should say the only option

16   to receive social security on a month-after-month basis would

17   be this 6331(h) continuous levy that's subject to a

18   15-percent limit.  That's just incorrect as a matter of law.

19   There's plenty of law supporting the government's position.

20        And again, Your Honor, I don't think you need to

21   actually decide that the government is definitively correct

22   on the merits, it's just if there's a debatable proposition

23   under the legal authority out there, plaintiff cannot come

24   within the Enochs vs. Williams Packing exception.

25        The second element of the Enochs vs.

1    Williams Packing exception is a far less involved analysis.

2    It is whether there is an irreparable injury.  I still don't

3    really think that the plaintiff has alleged an irreparable

4    injury from the ongoing social security levy.  The claim is

5    that this has made him penniless and that there's some sort

6    of economic hardship.

7         The government disagrees with the plaintiff's

8    contention in this regard.  Mr. Holland does have the ability

9    to earn income.  He's proposing a payment plan, in fact,

10   which is a little bit contradictory with his statement that

11   he's being left penniless.  If he's really penniless, then he

12   wouldn't have funds with which to pay a payment plan.

13        But in any event, the government's decision and its

14   discretion as to whether to offer Mr. Holland a payment plan

15   or not is something that isn't reviewable certainly not in a

16   mandamus action; it's a discretionary IRS decision.

17        THE COURT:  But he could file an action, if the

18   statute hasn't run, for damages or basically reimbursement

19   for what you've taken, if he can prove it was subject to the

20   15-percent limitation; is that not correct?

21        MR. MURPHY:  That is the way that he could have

22   properly put this issue before a court.  You are getting into

23   the second of the two exceptions to the Anti-Injunction Act,

24   which is South Carolina vs. Regan.

25        In the South Carolina case, the general holding of

1   the Supreme Court in that one was that if you are in a
2   situation where the plaintiff has no alternative remedy, no
3   way to obtain judicial review, then there can be an exception
4   to the Anti-Injunction Act.  And it's unclear whether
5   South Carolina vs. Regan would apply at all on these facts,
6   because it was a very unusual case.  It's been construed very
7   narrowly by subsequent courts interpreting that exception,
8   including the Sixth Circuit in the RYO Machine case, the
9   roll-your-own-cigarettes litigation.
10          But even assuming the South Carolina exception
11  could apply on these facts, it doesn't because Mr. Holland
12  had an opportunity to bring a damages action under Title 26,
13  Section 7433.  He had, I say past tense, because there's a
14  two-year statute of limitations on doing that, so his
15  two-year window on challenging the 2012 levy expired in 2014.
16          Be that as it may, it's still the government's
17  position here that because he had an alternative means to
18  present this issue to a court and get a ruling on the
19  substantive merits of his 15-percent argument, he cannot now
20  come in and obtain injunctive relief against the levy.
21          The plaintiff's response to this argument about the
22  damages action that he could have brought is that the
23  government would just offset whatever he won against his tax
24  debt which, of course, is substantial, and that's probably
25  correct; if he were to win a damages action, the government

*Motion to Dismiss - April 12, 2018*

1   would just offset it against his liability, but that does not

2   mean that he didn't have an alternative means to obtain a

3   judicial ruling on the argument that he's making here that a

4   social security levy is limited to 15 percent.

5          Under Section 7433, if a taxpayer prevails in

6   demonstrating that the IRS has done some unauthorized

7   collection action, the taxpayer can obtain the cost of the

8   action.  So it's not as though Mr. Holland would be unable to

9   pay his legal expenses for bringing a case like that, for

10  example, if he were to prevail.

11         THE COURT:  And that would change -- so even though

12  you would take back what you're giving him, if he is

13  successful, you would change the monthly payment in that it

14  would be limited, if he is successful, to the 15 percent?

15         MR. MURPHY:  Yes and no.  I don't think they would

16  actually give back the money since it's uncontested that he

17  owes it.

18         THE COURT:  That's what I mean.  I mean, the money

19  that you were to have given -- I mean, his award would be

20  kept by you to apply, I assume, to the unpaid balance?

21         MR. MURPHY:  Right, and going forward.

22         THE COURT:  But it would change the amount that you

23  are taking out of his social security?

24         MR. MURPHY:  Going forward, yes.

25         THE COURT:  Forward, yes.

1    MR. MURPHY:  Because if we have a court ruling that
2  he's correct, that only 15 percent of social security can be
3  levied, the government would not persist in that course of
4  conduct because then he would probably sue us again and we
5  probably would be sanctioned, and we wouldn't want that.  So
6  even though you can't call it injunctive relief, it would
7  effectively have that same result.
8    In fact, if Holland were to win a 7433 action, he
9  could probably then meet the Enochs vs. Williams Packing
10 exception, certainty of success on the merits.  And he would
11 say look at this 7433 case I did last month and I won, so I
12 have a certainty in success.  He'd have a collateral estoppel
13 potentially.  So there's a way he could have done this within
14 the remedies that are allowable under the law, and because of
15 that he cannot fit within the South Carolina vs. Regan
16 exception.
17   THE COURT:  Okay.
18   MR. MURPHY:  So neither exception applies, and
19 that's why the case needs to be dismissed.
20   THE COURT:  Thank you.  All right.  Mr. Nusholtz,
21 what is your response?
22   MR. NUSHOLTZ:  The most important question is
23 whether there is an alternative remedy for a number of
24 reasons, and the government's representing that if --
25   THE COURT:  You're going by the Regan exception,

1     judicial exception; is that right?

2              MR. NUSHOLTZ:  Well, I think if you look at the

3     four cases that have been involved in this issue, if you look

4     at -- the first case is the Standard Nut Margarine Company

5     case.  That was a case where somebody made margarine, the

6     government said it wasn't going to be taxed, and then they

7     had a case where they were going to tax it and they didn't

8     tax it.  So eventually the Nut Margarine Company sued for an

9     injunction to stop the government from assessing the tax

10    against itself or any of its dealers.  There really isn't an

11    alternative remedy to that situation because they are suing

12    for something for third parties.  In that case there was an

13    injunction granted.

14              The next case was the Enochs case.  The Enochs

15    case, there was a withholding tax issue, and the court talked

16    about the fact that the plaintiffs had an alternative remedy.

17    The alternative remedy is to pay the tax, ask for it back,

18    and then you sue for a refund.  The -- you know, the

19    Enochs -- the -- I'm sorry.  The Williams Packing was the

20    people seeking the injunction, and they complained that they

21    couldn't afford to pay the full tax; it was too much.  And

22    the response was, you know, you only have to pay one quarter,

23    and you actually only have to pay one employee, and they

24    could sue that way.

25              So the first case, the Nut case, there was no

```
 1   alternative remedy.  In Enochs there was an alternative
 2   remedy.
 3            The third case was the South Carolina case, which
 4   Mr. Murphy has discussed.  In that case the court
 5   specifically said -- the question whether the act applies
 6   when Congress is provided no -- it said, Williams Packing did
 7   not, however, address let alone decide the question of
 8   whether the act applies -- the Anti-Injunction Act applies
 9   when Congress provided no alternative remedy --
10            THE COURT:  Could you slow down?
11            MR. NUSHOLTZ:  I'm sorry.  No alternative remedy.
12   Indeed, as we shall see, a careful reading of
13   Williams Packing and its prodigy supports our conclusion that
14   the act was not intended to apply in the absence of such a
15   remedy.
16            So the critical question here, and the Court
17   pointed it out, is if Mr. Holland had sued for damages under
18   7433, he clearly would not get any money back.  The question
19   is whether the government would then voluntarily stop the
20   continuous levy at 15 percent, and -- you know, stop the
21   continuous levy, and now if they do a continuous levy, do it
22   at 15 percent.  There is no reason to believe that would
23   necessarily happen.  I suppose it could happen.
24            THE COURT:  Well, why wouldn't it happen if he
25   wins -- if your client wins the case?  Then they are saying
```

1    they shouldn't have been collecting the full amount, they

2    should have only been collecting 15 percent.

3            MR. NUSHOLTZ:  Because he would have to maintain a

4    second lawsuit every time they took the amount of money,

5    or -- or they would -- I don't know if they would switch.

6    That's the point.  The point is if they would agree to switch

7    now how -- well, I guess the argument is I should bring a

8    second lawsuit, prove the same thing, the same issues in this

9    lawsuit, and then hope that the government will comply with

10   the order in a way that's satisfactory because they won't be

11   obligated to.  I mean, logically it stands to reason that if

12   they continue to do it, he could file another lawsuit, but I

13   don't know -- I don't know if that's necessarily going to be

14   the case, and there's no reason for them to do it because

15   anytime he sues to get damages, they are going to levy on

16   whatever is paid to him, and he's never going to see a penny

17   of it, and they can just continue to do that as long as they

18   want.  There is no obligation except for me to come in --

19   even if I got sanctions, he wouldn't see the sanctions; the

20   sanctions would just go to Edward Holland, be levied on, and

21   then returned to the government.  So it's a -- it's a -- it's

22   a useless remedy to sue for -- any money that is owed to

23   Edward Holland by the government is subject to levy.

24           So if he -- let's say he got a judgment for $10,000

25   against the government, and then they -- the judge issues --

1    the court issues an order and says you owe Mr. Holland
2    $10,000.  They issue a levy.  They take the $10,000 that they
3    owe him, and they take it back because they can levy on the
4    money that's owed to him.  So he will never see a penny in a
5    7433 action for damages.
6          So the other -- or the other argument is the
7    statement by Mr. Murphy that all the cases have held that
8    there's no 15-percent limitation on a continuous levy.  That
9    is not true.  There is one case that I've cited in my brief,
10   the Anderson case, which held the other way.
11         But the odd thing is this, in 1997 the Congress
12   passed a law, and they gave the Internal Revenue Service an
13   additional tool of the ability to put a continuous levy on
14   social security, and when they did that, they said the
15   continuous levy on social security is limited to 15 percent.
16         The government's position, and in some of the cases
17   it has cited, is that Congress didn't need to do that.  If
18   the government always had the authority to do a continuous
19   levy, why would they pass a statute saying we're giving the
20   Internal Revenue Service authority to do continuous levies on
21   social security when, if the government's correct, the IRS
22   had that authority to do a continuous levy at 100 percent all
23   along?
24         There's another point I -- I should make.  One of
25   the cases cited by the government is the Bowers case.  It's a

 1    Seventh Circuit case.  It's not a continuous levy case, and
 2    the reason that you can tell that is because the plaintiff in
 3    that case had sought for injunction because the government
 4    had taken rough -- the court estimates roughly two-thirds of
 5    his social security monthly benefits.  That's not a
 6    continuous levy.  That's a different -- that's a single levy.
 7    The government can make a single levy on social security and
 8    they can take 100 percent, but they -- but if they're going
 9    to do a continuous levy, then they must do it pursuant to the
10    statute, which is limited to 15 percent.
11            The other issue which is important is that a
12    6331(a) levy, which is the one that the government is
13    contending this is done under, is limited to existing
14    liabilities.  And the question for the Court is whether
15    social security paid four years from now is an existing
16    liability as of today.  So if the government issues a notice
17    of levy today, will it cover a social security payment four
18    years from now?
19            And Mr. Holland's answer to that is, it should not
20    cover that because the payment four years from now is subject
21    to a contingency, and the contingency is that Mr. Holland
22    must be alive in the month preceding the payment, that's what
23    the statute says; you get it from the date you apply for
24    social security to the month -- you have to survive the month
25    before the payment is due.  So every one of those payments is

 1   a distinct, separate payment, and it is not -- it is not an

 2   existing liability, and the standard in the regulations is

 3   whether it is fixed and determinable.

 4        And fixed means -- I cited the cases on the

 5   explanation for this.  Fixed means that the -- you can sue

 6   for it.  You could sue today.  Could Edward Holland sue for

 7   his payments for social security five months from now, six

 8   months from now?  He can't.  He can't sue for those.  Those

 9   things are not due and owing until he survives the next four

10   months or the next five months or the next two years.  He

11   cannot sue on any of those claims to collect for

12   social security in the future.  So it is not fixed and

13   determinable pursuant to the regulations, and it is not

14   subject to a 6331(a) levy.

15        On the -- the other issue is the question of a

16   payment plan.  The -- I've had two of these cases where the

17   government has taken 100 percent of my client's

18   social security.  This is the second case I've had.  And what

19   typically happens is the IRS asserts the levy, they send it

20   to social security, and then the government -- the

21   social security begins to make the payments.  The case for

22   one reason or another gets transfer to the Justice

23   Department, like this one.

24        When I'm dealing with the IRS, I call them up, I

25   say, you know, you have a continuous levy on social security.

1    I would like to get a payment plan, because a payment plan
2    will stop the levy.  That's in the statute, it is cited in my
3    brief.  If you get a payment plan, the government no longer
4    levies.
5            So if I say to the government I would like a
6    payment plan, the Internal Revenue Service, they will say,
7    okay, fill out the paperwork, and we will agree to a payment
8    plan.
9            The Justice Department does not appear to be
10   subject to the same rules.  When the IRS issues the levy to
11   social security and it gets transferred to the Justice
12   Department, I can't -- both cases I've had, I cannot get the
13   government to give me a payment plan so I can get the levy
14   released.
15           So the normal assumptions that you would make about
16   levies and how the government is operating are not -- in my
17   experience, do not occur in the Justice Department; they are
18   not willing to release that levy.  And why that is important
19   is because that really is the remedy that Edward Holland
20   should have.  His remedy should be the customary payment
21   plan, which the government -- which the Internal Revenue
22   Service gives after they've given a levy.  You go in and get
23   a payment plan, it's customary.
24           But the argument here is that the remedy that
25   Edward Holland has is that he can sue under 7433 for damages,

1 │ and then the government would voluntarily stop the -- stop
2 │ the continuous levy.
3 │        So, I mean, you know, the government indicates in
4 │ its brief that the statute has expired on bringing that.  I'm
5 │ not sure because there's -- there are levies that will be
6 │ going on even as we speak.  The next levy will occur sometime
7 │ this month or sometime next month.  I can always come back
8 │ with that and have the same argument.  But the key question
9 │ here is does Mr. Holland have an alternative remedy?  And we
10 │ are being told that he theoretically has an alternative
11 │ remedy under Section 7433, and it's just a theoretical
12 │ conjecture that if we did sue under 7433 -- and it's also --
13 │ there are other things that have to be met; it has to be
14 │ negligent to win under 7433.  So suppose it's wrong but it's
15 │ not negligent.  Suppose -- you know -- I mean, that could
16 │ happen.  You know, it is just a theoretical argument that
17 │ this 7433 is an alternative remedy.  It's -- I don't believe
18 │ it would be.
19 │        THE COURT:  Okay.  I have a question.  Why are you
20 │ not -- I guess this is to the government.  Why are you not
21 │ resolving this matter by way of some payment plan?  Have you
22 │ done, like, a creditor's exam, or gone to facilitation to see
23 │ about this?
24 │        MR. MURPHY:  Mr. Holland has other valuable rights
25 │ under the copyright law, which he could exercise and he could

*Motion to Dismiss - April 12, 2018*

1    earn additional income from that.  He's chosen not to

2    exercise those rights because by his own admission and

3    communications to the government, he does not want the

4    government to come in and take all of it.

5          And so as a condition on doing any sort of a

6    payment plan with the government where the government might

7    obtain a piece of these -- the value of these rights that

8    Mr. Holland is currently sitting on, they want us to release

9    all levies up front in the hope that his exercise of these

10    rights might generate some future proceeds in the amount of

11    which we don't really know.

12          THE COURT:  So you're saying -- you're saying that

13    they want you to release the levy so you have a payment plan,

14    and then you can't levy on these things if he, in fact, gets

15    money for these in the future for these copyrights?  Is that

16    what you are saying?

17          MR. MURPHY:  Well, he has certain rights to

18    recapture rights or termination rights under the copyright

19    law for songs from way back, so after a period of time runs,

20    he has the chance to have a second bite at the apple.  I'm

21    not a copyright law expert, but that's how I understand it to

22    be.

23          THE COURT:  Right.

24          MR. MURPHY:  And if he chose to exercise those

25    rights and market them, he could potentially earn a

*Motion to Dismiss - April 12, 2018*

22

1  substantial sum of money from that. But he's simply choosing

2  not to do that at this time because he wants the government

3  to concede in advance that it will not collect from the

4  currently existing collection sources, not only his

5  social security but also his royalties from other music

6  ventures that are not a part of the other case before you,

7  Judge.

8  So there is actually another case that Mr. Nusholtz

9  filed on the same day as this one in this court before a

10 different judge relating to Gold Forever Music that we have a

11 motion to dismiss that is teed up and has not been decided.

12 They asked us as a condition of doing any payment

13 plan to release not only the social security levy but also

14 the Gold Forever Music levy, which actually brings in a lot

15 more money than the social security levy does.

16 THE COURT: Of course, you are not going to do

17 that.

18 MR. MURPHY: Right.

19 THE COURT: Okay.

20 MR. MURPHY: If we could have it proven to our

21 satisfaction that his exercise of the termination rights

22 would generate more money than is coming in now, and doesn't

23 actually make the government worse off than it is in the

24 present collection status, we would, of course, consider

25 that, but we have not received that kind of proposal.

1      THE COURT:  Okay.  Thank you.  The Court will issue

2   an opinion.

3      MR. NUSHOLTZ:  Thank you, Your Honor.

4      THE COURT:  Let me ask plaintiff, do you have any

5   comments -- this has nothing to do with this motion -- but

6   any comments on that settlement?

7      MR. NUSHOLTZ:  The payment plan -- the payment plan

8   we offered was -- and it is a standard procedure to identify

9   the amount of money that Mr. Holland would keep so can he

10  live, and I used government tables to do that, and then I

11  offered -- we offered to split 50 percent of everything that

12  he receives over that.  So whatever Mr. Murphy thinks he

13  would get in terms of income, all of that would be split

14  equally between him and the government.  Because if the

15  government takes 100 percent of everything that he gets, he

16  has no incentive to do anything because everything he tries

17  -- every dollar he tries to make, they will take out of his

18  hands, and they will take out of the hands of any company

19  that he creates to try to make money because they will treat

20  them as alter egos, which is one of the problems with Gold

21  Forever, which is it's an existing company that's being

22  treated as an alter ego.

23      So we thought -- we are not telling the government

24  you can't have the money he earns.  We're just saying let him

25  have enough money to live on, and then take 50 percent of

1   everything over that so he has an incentive to go out and
2   make money, and then you will get 50 percent of everything he
3   makes.  That's what the discussion has been.  It's not as --
4   you know, there is an argument that they are taking money
5   from Gold Forever as an alter ego, which we are arguing it is
6   not an alter ego.  It has its own creditors.  It has its own
7   bills.  It can't even pay its taxes because they are taking
8   every dollar from it.
9            It is true that today, if they can't take all of
10  that money from Gold Forever, they would get less than --
11  than -- you know, that would stop.  But if you allow him to
12  exercise his recapture rights, retake his music, try to
13  market them, try to make money, the government will probably
14  be better off than killing the whole Gold Forever business,
15  which is going to die soon because they are taking every
16  penny, and it can't pay any of its bills.
17           So that's basically our position in response to
18  what Mr. Murphy has said.  Yes, we would like them to stop
19  the levies, and we would -- we've offered to pay -- you know,
20  let Holland have enough to live on and then 50 percent over
21  that.
22           MR. MURPHY:  I told Mr. Nusholtz that we would be
23  interested in doing something along the lines of what he's
24  describing, but we're not going to release the levies up
25  front.  So what he's described as giving him a certain amount

1   of income tax-free, above which 50 percent would go to

2   Mr. Holland and 50 percent to the government, the income from

3   these recapture rights, that's something that I think -- I

4   can't personally approve, but we've had these discussions,

5   and I think it would be approved.

6         The problem is releasing the levies up front.  It

7   is essentially making the government take on the risk that

8   these termination rights actually aren't worth very much, or

9   he doesn't do a good enough job marketing them or whatever

10   might happen.  The government shouldn't bear that risk and

11   give up its current ongoing collection, Mr. Holland can bear

12   that risk.  And so the -- and actually the social security

13   levy would become irrelevant if he makes above the 42,000, or

14   whatever it is, based on his living expenses that he would

15   get tax-free because his social security is less than 42,000

16   annually.  If that's the tax-free amount, and he's making

17   more than that, and he gets into this 50-percent split, it

18   really doesn't matter whether some of that tax-free income he

19   earns -- we call that his income from exercising his

20   recapture rights or if we call it the social security income,

21   because he's making income above the level after which the

22   split would kick in.

23         So if he actually did this and was earning the

24   money, the social security levy would become an irrelevancy,

25   but then he doesn't want to do that; they want the government

```
 1   to give up things upfront without really knowing what might
 2   occur as far as the exercise of the termination rights, and
 3   that's not something that we can do at this point.  If we can
 4   have something more concrete that demonstrates that this
 5   would be in the government's interest to do, of course we
 6   would entertain it.
 7           THE COURT:  What do you mean give up the levy
 8   totally?  I thought you would work out as part of the
 9   settlement a certain amount of money which would be -- I
10   don't know these numbers now to repeat them without
11   looking -- but under that part of the statute in which you
12   could, in fact, enter into an agreement for -- forever --
13           MR. NUSHOLTZ:  Right.
14           THE COURT:  -- the payment of a certain amount of
15   money from the social security.
16           MR. NUSHOLTZ:  I mean, typically the
17   social security isn't enough for him to live on, so
18   there's -- it comes out to about -- he gets $2,400 a month,
19   and the -- his minimum living requirement would be about
20   $42,000 after taxes, which is what Mr. Murphy refers to as
21   being tax-free.
22           But the key question here is something that I think
23   needs to be straightened out.  And I'm talking to Mr. Murphy
24   through you, and I apologize for that, but this idea that the
25   government gives up its levies -- it doesn't give up its
```

1    levies.  It stops levying, and then Mr. Holland makes the

2    payments under the payment plan.  And if he violates the

3    payment plan, they haven't given up their right to levy on

4    him.  As long as he -- the deal is he meets the terms of the

5    payment agreement and then they don't levy on him, because

6    the statute says if there's an installment agreement in

7    effect, the government can't levy.  That's the way -- so, of

8    course, we are asking them not to levy.

9         But the point is that if they levy him while he's

10   trying to make money, he's going to stop because every time

11   he tries to get something going -- he tries to get enough

12   money to make an investment in something, or whatever he

13   needs to do, they take it all.  There's no point in --

14        THE COURT:  Is -- is there a way that you could

15   stay the levy so that if he, in fact, doesn't abide by the

16   agreement, it would automatically be instituted, and you

17   wouldn't have to do anything?

18        MR. NUSHOLTZ:  That's how it is supposed to work.

19   I mean, every deal, you have the installment agreement, you

20   violate your installment agreement, you are in hot water; you

21   don't have the installment agreement anymore if you violate.

22        THE COURT:  I mean, it seems to me you should be

23   able -- if you agree to a certain amount, I don't know, you

24   may not want to do that at all, but let's say you do.  If you

25   were guaranteed this, and you didn't give up anything else,

*Motion to Dismiss - April 12, 2018*

1    it seems to me that it would be reasonable to say you pay --

2    I'm picking a number -- this is nothing -- $2,000 a month on

3    a certain date, and if you don't pay it by that date, you

4    know, seven days later or five days later automatically we

5    take your social security.  There's nothing else to be done.

6         Anyway, I'm leaving that with you two so that you

7    can discuss it and see whether this is a possibility.  And I

8    will enter an opinion in this case, but I'm going to hold it

9    for a month.  I want you to meet and to continue these

10   discussions because otherwise this is going to go on.  You

11   are going to maybe get what you want, but then it is going to

12   come up again.  And I don't know about this other case and

13   what could be done, but I certainly think that it is worth a

14   continued dialogue.

15        MR. NUSHOLTZ:  I agree with you, Your Honor.

16        THE COURT:  Okay.  Thank you.

17        MR. NUSHOLTZ:  Thank you.

18        THE LAW CLERK:  All rise.  Court is in recess.

19        (Proceedings concluded at 1:33 p.m.)

20              -   -   -

21

22

23

24

25

1

*CERTIFICATION*

2

3          I, Robert L. Smith, Official Court Reporter of

4   the United States District Court, Eastern District of

5   Michigan, appointed pursuant to the provisions of Title 28,

6   United States Code, Section 753, do hereby certify that the

7   foregoing pages comprise a full, true and correct transcript

8   taken in the matter of EDWARD J. HOLLAND, JR. vs. UNITED

9   STATES OF AMERICA, et al., Case No. 17-13926, on Thursday,

10  April 12, 2018.

11

12

13                          *s/Robert L. Smith*
                           Robert L. Smith, RPR, CSR 5098
14                         Federal Official Court Reporter
                           United States District Court
15                         Eastern District of Michigan

16
    Date:  05/20/2019
17  Detroit, Michigan

18

19

20

21

22

23

24

25